IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CITIZENS BANK OF BATESVILLE, ARKANSAS, ET AL.                    PLAINTIFFS

v.                              No. 4:06CV00322 GH

HAROLD B. COLLINS, M.D., ET AL.                                 DEFENDANTS

## ORDER

Plaintiffs filed this complaint for medical malpractice on the basis of diversity jurisdiction on March 10th.

Eble filed a motion to dismiss for lack of subject matter jurisdiction on April 17th on the ground that she is a citizen of Arkansas as are plaintiffs so there is no diversity of citizenship. She argues that Arkansas is the only state of which she has been a citizen; she was born here and lived in Arkansas continuously until 2003; she moved with her husband to Houston, Texas in 2003 so he could complete his medical training with a three-year fellowship; and she remained a citizen of Arkansas after the move to Texas as she did not establish a domicile there. Plaintiff argues that there is a presumption that she is not a citizen of Texas as she temporarily moved there for the duration of her spouse's educational endeavor and plaintiffs cannot meet their burden of proving by a preponderance of the evidence that she changed her citizenship or domicile.

In support of her argument that she has always intended to return to Arkansas, Eble points to the affidavits of various doctors she told prior to her move of her intent to return to Arkansas; her retaining her checking account at First Arkansas Bank & Trust; she and her husband purchasing a

home in Texas with a three-year adjustable rate mortgage with the intent of selling the home after her husband completes his three-year medical training; their purchase of property in Pulaski County approximately one year ago and the building of a home with a loan obtained through the Bank of the Ozarks in Arkansas which they intend to live in upon the completion of training; her verbal commitment approximately one year ago with the Central Clinic for Women in Little Rock to begin practicing there upon her husband's completing his fellowship and their return to Arkansas; her application for privileges at local hospitals under the Central Clinic for Women name two or thee months ago; her retention of her Arkansas medical license and her membership in the Arkansas Medical Society during her temporary absence; her continued financial contributions to the Guy Church of Christ in Arkansas even while temporarily living in Texas; her parents and various aunts and uncles living in Arkansas; and her husband never applying for a Texas medical license as he is to work for Arkansas Children's Hospital upon completion of his training.

Eble has submitted her affidavit to the above facts and the affidavits of Holly Cockrum, M.D., and Paul McChristian, M.D., of Eble stating her intent prior to moving to Texas to return to Arkansas upon the completion of her husband's medical training.

DHHS responded on April 26th that the manner in which Eble conducted her affairs subsequent to her move to Texas is inconsistent with a temporary absence from Arkansas so there is diversity of citizenship.  It points out that Eble surrendered her Arkansas driver's license on July 8, 2003, after obtaining a driver's license in Texas; she registered to vote in Brazoria County, Texas listing her residence in Manvel, Texas as her domicile for purposes of vote registration; she did not assess personal property in Pulaski County subsequent to her move so she could not register a motor vehicle here; she did not update her Arkansas voter registration which records show she has not

voted since November 5, 2002 and her status is inactive; and she did not contend that she has claimed Arkansas residency for the purposes of the tax code and the use of the factors utilized by the State of Arkansas in considering whether an individual is a resident show that the State does not consider her a resident.  This brief is supported by the affidavit of David Randall Hudelson with DHHS, a letter from the Department of Finance of Administration, and the Pulaski County Clerk voter detail as to the above facts.

On May 1st, Citizens filed its response which adopts and incorporates the response of DHHS. It adds that Eble in sworn testimony on December 6, 2004 testified that her address was Manvel, Texas and she was employed as an assistant professor at Baylor College of Medicine.  Citizens, in the alternative, argues that if the Court is inclined to grant the motion, then the dismissal should be involuntary and without prejudice to plaintiffs' ability to recommence suit in an Arkansas state court.

Eble filed a reply on May 10th that plaintiffs do not dispute that it is their burden to demonstrate by a preponderance of the evidence that Eble's domicile is not Arkansas and to overcome the applicable presumptions; a presumption exists that Eble is a citizen of Arkansas and that she is simply a temporary resident of Texas for the duration and for the purposes of her husband's educational endeavor; the factors indicating a change in domicile are physical presence in a state and the intent to remain indefinitely; and the essential issue is whether plaintiffs can prove Eble intended to remain in Texas indefinitely thus establishing a Texas domicile.  She contends that plaintiffs produced only limited information that was inadequate to meet their burden that Eble intended to remain in Texas indefinitely.  Eble states that obtaining a Texas driver's license and registering her vehicle was simply complying with Texas law for a new resident and that while she

registered to vote there is no evidence of her voting in Texas. She counters her previous testimony that she has a Texas address and being an assistant professor at Baylor as she does not deny her address at the time or her employment, but that does not diminish the fact that she never intended to remain in Texas for more than three years. She submits her supplemental affidavit that she retained her license with the Arkansas Medical Board, she purchased property in Pulaski County pursuant to a May 18, 2005 contract, she has been issued a 2006 real estate tax statement on the property she purchased for the construction of her home, she has maintained an Arkansas bank account while in Texas, her husband accepted a post-doctoral fellowship in 2003, she has maintained her membership in the Arkansas Medical Society, and she obtained a three-year adjustable rate mortgage for the purchase of her family's home in Texas. Eble also submits the affidavit of Dr. Keitha Holland that Eble told her before moving to Texas that she intended to reside in to Arkansas upon completion of her husband's training.

Eble counters that the dismissal should be with prejudice as plaintiffs non-suited their first complaint in state court and this case would be dismissed here for lack of jurisdiction. She argues that a dismissal without prejudice would permit plaintiffs two chances to re-file their suit when the statute of limitations has expired.

As the plaintiffs and Eble have cited to Altimore v. Mount Mercy College, 420 F.3d 763, 768-769 (8th Cir. 2005), the relevant excerpts follow:

> Federal courts have subject matter jurisdiction in this case based on diversity of citizenship if Dr. Altimore and Mount Mercy are "citizens of different States." 28 U.S.C. § 1332(a)(1); Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990). Because Mount Mercy removed this case to federal court, it bears the burden of establishing jurisdiction by a preponderance of the evidence. Yeldell, 913 F.2d at 537. Whether diversity of citizenship exists is determined at the time the suit is filed – not when the cause of action arose. Id. The district court's "determination of citizenship for the purpose of diversity is a mixed question of law and fact, but mainly fact." Blakemore v. Mo. Pac. R.R. Co., 789 F.2d 616, 618 (8th Cir. 1986).

-4-

Although we review de novo questions of federal subject matter jurisdiction, see <u>Canady v. Allstate Ins. Co.</u>, 282 F.3d 1005, 1012 (8th Cir. 2002), the district court's "findings upon which the [diversity] determination is made may not be set aside by an appellate court unless clearly erroneous," <u>Blakemore</u>, 789 F.2d at 618.

The legal standard to determine citizenship is straightforward. Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely. <u>Yeldell</u>, 913 F.2d at 537. Once an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship. <u>Id.</u> As the parties do not dispute Mount Mercy is an Iowa citizen, we focus on Dr. Altimore's citizenship, and ask whether the district court erroneously determined Dr. Altimore is a Pennsylvania citizen.

In his quest to sue Mount Mercy in state court, Dr. Altimore subjectively maintains he is an Iowa citizen. However, his conduct over the past few years belies his litigation position. The record contains overwhelming evidence pointing to Pennsylvania as Dr. Altimore's state of citizenship – Dr. Altimore resides in Pennsylvania; teaches sociology in Pennsylvania; votes in Pennsylvania; banks in Pennsylvania; possesses a Pennsylvania driver's license; seeks medical treatment in Pennsylvania; pays taxes in Pennsylvania; and, when asked by Temple and the federal government to list his address, lists Pennsylvania. The State of Iowa might be surprised to discover Dr. Altimore contends he is an Iowa citizen even though he pays no taxes in Iowa, has not worked in Iowa since 2000, owns no property in Iowa, does not live in Iowa, does not visit Iowa, does not bank in Iowa, does not vote in Iowa, does not seek medical treatment in Iowa, and does not possess an Iowa driver's license.

Dr. Altimore contends the materials he left in his Mount Mercy office show he intends to return to Iowa. However, Dr. Altimore has repeatedly revealed the importance of these materials by neglecting them while he taught sociology at Temple and by refusing to provide Mount Mercy with a forwarding address. Leaving papers and the like in a college office cannot overcome the evidence mentioned above. Dr. Altimore also claims he retained his Iowa citizenship by signing an employment contract with Mount Mercy in March 2001, which showed his intent to return to Iowa. As he subsequently breached this contract (as discussed below) to remain in Pennsylvania, we fail to see how this argument assists his litigation position on the diversity issue. The minimal evidence linking Dr. Altimore to Iowa combined with his subjective assertions of citizenship do not outweigh the strong and clear evidence indicating Dr. Altimore is a Pennsylvania citizen.

In addition, the case of <u>Holmes v. Sopuch</u>, 639 F.2d 431, 434 (8th Cir. 1981), discussed the

question of domicile and an adult student as set out below:

Like many out-of-state students, therefore, Holmes did not establish a new domicile in Ohio because he intended to remain there not for an indefinite period but only for as long as his studies required. See generally, 13 Wright, Miller & Cooper, <u>supra</u> § 3619, at 751

(out-of-state students generally have been viewed as temporary residents who are located in the state only for the duration and for the purpose of their studies); Id. § 3613, at 733-36 (an individual must intend to remain at the new home for an indefinite period; discussion of an "indeterminate" or "floating" intention to return at some future time).

The Court first examines the factors cited by the plaintiffs.  Eble admits that she obtained a Texas driver's license because she explained that it was necessary under Texas law which requires that of a new resident within 30 days.  She also acknowledges registering to vote in Texas, but points out that there is no evidence that she ever voted there.  Eble recognizes that she testified in 2004 that her address was in Texas and that she was employed there, but challenges those facts as supporting a change in domicile when those same factors also support that she was in Texas during that period due to her husband's education before their planned return to Arkansas.  The lack of a personal property assessment and non-payment of Arkansas taxes can indicate just residency as easily as they can domicile.

In contrast, Eble has presented affidavits from three individuals reflecting that Eble told each of them that she was moving to Texas for the duration of her husband's medical training and would be returning to Arkansas upon the completion of that training.  She, of course, has submitted her own affidavits and records which show that she has maintained a checking account in Arkansas, has maintained her Arkansas medical license and membership in the Arkansas Medical Society, and her husband never applied for a Texas medical license as he was to work at Arkansas Children's Hospital upon completion of his fellowship in Texas.  The Court finds the most significant factors to be that Eble and her husband obtained just a three-year adjustable rate mortgage which mirrors the duration of her husband's fellowship in Texas; that they purchased property in Arkansas in 2005 and commenced the building of a home upon which taxes have been assessed, her 2005 commitment with the Central Clinic for Women in Little Rock to begin practicing there upon her husband's

-6-

completing his fellowship and their return to Arkansas and her subsequent application for privileges at local hospitals under the Central Clinic for Women.

The Court is persuaded that these factors, which occurred prior to the commencement of this lawsuit in 2006, provide substantial proof to the presumption that Eble's domicile continued in Arkansas during the three-year period of her husband's fellowship.  In sum, while there are several factors identified by plaintiffs that could indicate a change in domicile, they do not constitute a preponderance of evidence of such a change in light of the more numerous and unambiguous factors – unlike <u>Altimore</u> – supporting that the move to Texas was for only a limited three-year period to accommodate the education of Eble's husband and was not a change in domicile or citizenship.  Thus, the Court finds that plaintiffs have not met their burden of establishing diversity jurisdiction.

Accordingly, Eble's April 17th motion (#11) to dismiss for lack of subject matter jurisdiction is hereby granted.  As the Court has always considered a dismissal for lack of subject matter jurisdiction as being involuntary, this dismissal is without prejudice.

IT IS SO ORDERED this 21st day of February, 2007.

UNITED STATES DISTRICT JUDGE